UNITED STATES of America,
Plaintiff–Appellee,

v.

Prentice Harold DAWKINS,
Defendant–Appellant.

No. 99–4240.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1999.

Decided Feb. 4, 2000.

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

Before WILKINS and MICHAEL, Circuit Judges, and Margaret B. SEYMOUR, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part and vacated and remanded in part by published opinion. Judge WILKINS wrote the opinion, in which Judge MICHAEL and Judge SEYMOUR joined.

## OPINION

WILKINS, Circuit Judge:

Prentice Harold Dawkins was convicted by a jury of two counts of making a false statement to obtain federal employee's compensation in violation of 18 U.S.C.A. § 1920 (West Supp.1999). He was sentenced to 15 months incarceration and was ordered to pay $64,536 in restitution. Dawkins appeals both his convictions and sentence; we affirm the convictions but vacate the sentence and remand for resentencing.

## I.

Dawkins worked for the United States Postal Service from 1966 until he was injured during the course of his employment in 1979. He was subsequently determined to be totally disabled and began receiving federal employee's compensation benefits pursuant to 5 U.S.C.A. § 8105 (West 1996).

As a condition of continuing to receive the benefits, the Department of Labor required Dawkins to periodically fill out and sign "1032 forms" concerning his employment and income. In signing the forms, Dawkins certified that "all the statements made in response to questions on this form are true, complete and correct to the best of my knowledge and belief." J.A. 166, 171. Dawkins also acknowledged that fraudulently concealing or failing to report required information that could impact his benefits, or making a false statement or misrepresenting a material fact on the form, could subject him to criminal prosecution.

Dawkins completed one 1032 form in February 1997 and another in December 1997.[1] On both forms, he denied having been either self-employed or involved in any business enterprise during the preceding 15 months. However, in January 1997 Dawkins was arrested in Texas after having smuggled 85 pounds of marijuana from Mexico into the United States in secret compartments in his vehicle. Dawkins claimed that he expected to be paid $1,500 for delivering the drugs to South Carolina. Dawkins pled guilty to a state felonious possession charge and was sentenced to ten years probation.

The Government indicted Dawkins for failing to disclose his employment in the illegal drug business on the 1032 forms filed in February and December 1997. A jury found Dawkins guilty of two counts of making a false statement on the forms— one count for each 1032 form. At sentenc-

ing, the district court determined that the loss amount was the amount of the benefits Dawkins had received during the period covered by the two forms, or $64,536. The court sentenced Dawkins to 15 months incarceration and ordered him to pay restitution in the full amount of the loss.

## II.

### A.

Dawkins first contests his convictions, arguing that while the Department of Labor clearly has the authority to require recipients of partial disability benefits to complete 1032 forms, there is no corresponding authority for the Government to obligate total disability claimants to file these statements. Dawkins asserts that he cannot be convicted of making a false statement on a form that he was not lawfully required to submit. Whether a district court has jurisdiction over a criminal offense is a question of law that we review de novo. *See United States v. Walczak*, 783 F.2d 852, 854 (9th Cir.1986).

Dawkins supports his argument by pointing to differences in statutory language. The statute concerning partial disability benefits expressly provides that "[t]he Secretary of Labor may require a partially disabled employee to report his earnings from employment or self-employment, by affidavit or otherwise, in the manner and at the times the Secretary specifies." 5 U.S.C.A. § 8106(b) (West 1996). The statute concerning total disability benefits, in contrast, does not include similar language, or indeed any language implying an ongoing reporting requirement. *See* 5 U.S.C.A. § 8105. Dawkins contends that the absence of such language indicates that Congress must have intended to omit from § 8105 the reporting requirement found in § 8106(b).

---

1. The 1032 form filed in February 1997 actually was completed and signed by Dawkins' wife after the two consulted by telephone; Dawkins was incarcerated at the time. He has adopted the statements in the February 1997 form and does not dispute that any false statements are his.

While this difference in statutory language is notable, we nevertheless conclude that Congress has conferred on the Department of Labor the authority to require recipients of total disability benefits to complete periodic 1032 forms. We find this authority in sections 8145 and 8149 of Title 5 of the United States Code. *See* 5 U.S.C.A. §§ 8145, 8149 (West 1996). Section 8145 mandates that the Secretary of Labor "administer, and decide all questions arising under" the federal employee's compensation scheme. 5 U.S.C.A. § 8145. Section 8149 authorizes the Secretary of Labor to "prescribe rules and regulations necessary for the administration and enforcement of" the relevant portion of that scheme. 5 U.S.C.A. § 8149. Requiring total disability claimants to file periodic statements concerning their employment and income is part of administering the federal employee's compensation program. And, the Secretary of Labor has exercised this authority to enact a regulation requiring total disability claimants to file periodic reports with the Department. *See* 20 C.F.R. § 10.525 (1999). Accordingly, we conclude that Dawkins was lawfully required to file the 1032 forms, and we affirm his convictions. *Cf. United States v. Fitzgerald,* 147 F.3d 1101, 1103–04 (9th Cir.1998) (rejecting argument that Department of Labor lacked authority to require total disability beneficiaries to file periodic statements, because such authority was implicit in § 8105 and because recent amendments to 18 U.S.C.A. § 1920 indicated congressional intent for total disability beneficiaries to file such updates).

### B.

Dawkins next challenges the loss amount calculated by the district court. *See U.S. Sentencing Guidelines Manual* § 2F1.1(b)(1) (1998). The district court found that the loss for sentencing purposes was the total amount of benefits paid to Dawkins during the time covered by the February and December 1997 1032 forms, or $64,536. We review the factual findings of the district court for clear error, and we review its legal interpretation of the Sentencing Guidelines de novo. *See United States v. Parsons,* 109 F.3d 1002, 1004 (4th Cir.1997).

"[L]oss is the value of the money … unlawfully taken." U.S.S.G. § 2F1.1 comment. (n.8); *see also* U.S.S.G. § 2F1.1 comment. (n.8(d)) ("In a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses."). In describing how the Sentencing Guidelines define loss, we recently stated that "[t]he general rule is that loss is determined by measuring the harm to the victim." *United States v. Ruhe,* 191 F.3d 376, 391 (4th Cir.1999). The Government bears the burden of proving the amount of the loss. *See* 18 U.S.C.A. § 3664(e) (West Supp.1999); *United States v. Reddeck,* 22 F.3d 1504, 1512 (10th Cir.1994).

The Government maintains that by making a false statement on the 1032 forms Dawkins disentitled himself to all federal employee's compensation benefits. *See* 5 U.S.C.A. § 8148(a) (West Supp.1999); 20 C.F.R. § 10.529 (1999). It argues that it therefore lost the entire amount of benefits Dawkins received during the period of time covered by the two relevant 1032 forms.

Our reasoning in *United States v. Parsons,* 109 F.3d 1002 (4th Cir.1997), forecloses this argument. *Parsons* involved the direct appeal of a postal service worker convicted of making false statements on a travel voucher in violation of 18 U.S.C.A. § 1001 (West Supp.1999). *See Parsons,* 109 F.3d at 1003. The district court determined that the loss was the total amount claimed in the vouchers. *See id.* We disagreed, and held that the loss was only the amount fraudulently claimed. *See id.* at 1006. As is relevant here, we stated that even if automatic forfeiture of the entire voucher amount were required as a result of the false statement,

this does not mean that the amount forfeited by a defendant constitutes a loss

to the Government for guidelines purposes. Forfeiture is a penalty imposed on a criminal independent of any loss to the crime victim. As Chief Judge Wilkinson recently explained, the "procedures for forfeiture are set forth in a comprehensive statutory framework of their own, one which is separate and apart from the sentencing guidelines." *United States v. Weinberger,* 91 F.3d 642, 644 (4th Cir.1996).

*Id.* at 1005. *Parsons* thus instructs that we view the calculation of loss for sentencing purposes differently than forfeiture. Therefore, although the Government may be entitled to collect $64,536 via forfeiture, *see* 20 C.F.R. § 10.529, that is not necessarily the measure of loss for sentencing purposes. *See United States v. Henry,* 164 F.3d 1304, 1311–12 (10th Cir.) (Henry, J., concurring in part and dissenting in part) (stating that loss is "the magnitude of the crime at the time it was committed," and reasoning that in this context loss should be calculated as the amount of benefits received above what would have been received "but for the violation" (internal quotation marks omitted)), *cert. denied,* —— U.S. ——, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999).

Accordingly, we vacate Dawkins' sentence and remand for the district court to recalculate the loss amount. Guided by *Parsons,* we advise the district court to consider loss as the difference between the amount of benefits Dawkins actually received and the amount he would have received had he truthfully and accurately completed the 1032 forms. *See Parsons,* 109 F.3d at 1004–05. *But see Henry,* 164 F.3d at 1310 (rejecting argument that loss amount in case involving falsified 1032 form is difference between what was actually received and what assertedly would have been received if defendant had truthfully reported his employment activity, on basis of jurisdictional language contained in 18 U.S.C.A. § 1920).

## C.

As we have ordered the district court to recalculate the loss amount on remand, and the restitution amount depends on the amount of loss, *see* 18 U.S.C.A. §§ 3663A(a)(1), (c)(1)(A)(ii), 3664(f)(1)(A) (West Supp.1999), the district court will necessarily have to reconsider the matter of restitution. We nevertheless address Dawkins' challenges to the present restitution order to guide the district court on remand.

The district court ordered Dawkins to pay restitution in the full amount of the loss and a $200 special assessment, and stated that both were immediately due and payable in full. The court also specially instructed that:

> If the defendant is unable to pay the special assessment and the restitution owed immediately, the special assessment may be paid through the Inmate Financial Responsibility Program, and the restitution shall be paid in installments of $200.00 per month to begin 60 days after the defendant's release from prison. At the time of the defendant's release, the probation officer shall take into consideration the defendant's economic status as it pertains to his ability to pay the restitution ordered and shall notify the Court of any changes that may need to be made to the payment schedule.

J.A. 202.

The parties agree that the provisions of the Mandatory Victim Restitution Act (MVRA) of 1996 apply to this case because Dawkins' offense conduct occurred after the enactment of the MVRA. *See* Pub.L. No. 104–132, §§ 201–211, 110 Stat. 1214, 1227–41, *codified in relevant part at* 18 U.S.C.A. §§ 3663A, 3664 (West Supp. 1999). As is relevant here, the MVRA mandates restitution in the full amount of the victim's loss for "an offense against property under [Title 18], including any offense committed by fraud or deceit." 18 U.S.C.A. § 3663A(c)(1)(A)(ii); *see id.* §§ 3663A(a)(1), 3664(f)(1)(A). Although

the sentencing court is required to order full restitution "without consideration of the economic circumstances of the defendant," 18 U.S.C.A. § 3664(f)(1)(A), the statute also mandates that the court specify the manner and schedule by which the defendant is to pay restitution:

Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C.A. § 3664(f)(2).[2]

■ Dawkins argues that the district court did not satisfy its statutory obligation to specify the manner and schedule by which he was to pay restitution because the court ordered the entire restitution amount immediately due. We, however, consider the district court to have effectively discharged its responsibility to set a payment schedule when it instructed that if Dawkins were unable to pay the full restitution amount immediately, he could pay $200 per month beginning 60 days after his release. We therefore reject this assignment of error.

■ Dawkins also asserts that the district court failed to make certain factual findings. The MVRA clearly requires a sentencing court to consider the factors listed in 18 U.S.C.A. § 3664(f)(2) when determining how restitution is to be paid. Additionally, a sentencing court must make a factual finding keying the statutory factors to the type and manner of restitution ordered; it must find that the manner of restitution ordered is feasible.[3] Cf. United States v. Bailey, 975 F.2d 1028, 1031–32 (4th Cir.1992) (stating that, under predecessor to MVRA, district court must make factual finding keying defendant's financial condition to the restitution order and determining that the defendant can feasibly comply with the order). Such fact-finding requirements are necessary to facilitate effective appellate review. See United States v. Molen, 9 F.3d 1084, 1086 (4th Cir.1993); United States v. Bruchey, 810 F.2d 456, 458 (4th Cir.1987). A court may comply with these requirements by "announcing its findings on the record or by adopting adequate proposed findings contained within a presentence report." United States v. Blake, 81 F.3d 498, 505 (4th Cir.1996).

Our review of the record indicates that the district court did not make all of the necessary factual findings. The court adopted the proposed findings of the presentence report (PSR), which contained a section concerning Dawkins' financial condition. The PSR adequately described Dawkins' financial resources and assets, see 18 U.S.C.A. § 3664(f)(2)(A), and his projected earnings, see id. § 3664(f)(2)(B).

2. A sentencing court can order "a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C.A. § 3664(f)(3)(A). A court also may order nominal periodic payments if "the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C.A. § 3664(f)(3)(B).

3. Dawkins argues that the factors listed in 18 U.S.C.A. § 3572(a) (West Supp.1999) also must be considered on the record by the district court because 18 U.S.C.A. § 3664(f)(2) requires the court to specify the manner of payment "pursuant to section 3572." 18 U.S.C.A. § 3664(f)(2). However, Congress explicitly listed in § 3664(f) the factors that it wanted sentencing courts to consider, and it did not include those factors listed in § 3572(a).

 

Although the PSR did not offer a tremendous breadth of information regarding Dawkins' financial obligations, it did note that Dawkins owed no money on his vehicles or the home in which he lived and that he had no financial dependents; adopting these facts adequately discharged the statutory obligation of the district court. *See id.* § 3664(f)(2)(C). However, the record is devoid of any factual finding that keys Dawkins' financial situation to the restitution schedule ordered or finds that the order is feasible. *See Bailey,* 975 F.2d at 1031–32. We therefore instruct the district court, when it reconsiders the restitution order on remand, to make such a finding on the record. *See Blake,* 81 F.3d at 505.

### D.

 Dawkins argues that the district court illegally delegated its judicial authority by allowing the probation office to adjust the restitution payment schedule after considering Dawkins' economic status.[4]

 A district court may not delegate to the probation office the final authority to establish the amount of a defendant's partial payment of either restitution or a court-imposed fine. *See United States v. Miller,* 77 F.3d 71, 77–78 (4th Cir.1996); *United States v. Johnson,* 48 F.3d 806, 808–09 (4th Cir.1995). "[I]n every delegation, the court must retain the right to review findings and to exercise ultimate authority." *Johnson,* 48 F.3d at 809.

Here, the district court ordered the probation officer to take Dawkins' financial situation into consideration and "notify the Court of any changes that may need to be made to the payment schedule." J.A. 202. Thus, the court retained both the right to review the probation officer's findings and to exercise ultimate authority regarding the payment of restitution; the court therefore did not illegally delegate its au-

thority. *See Miller,* 77 F.3d at 77 (explaining that "[u]ltimate authority can be retained by requiring the probation officer to recommend restitutionary decisions for approval by the court"); *Johnson,* 48 F.3d at 809.

### III.

Accordingly, we affirm Dawkins' convictions, vacate his sentence, and remand for the district court to recalculate the loss amount and resentence Dawkins in a manner not inconsistent with this opinion.

*AFFIRMED IN PART; VACATED AND REMANDED IN PART.*

**4.** Dawkins also maintains that the district court improperly delegated to the Bureau of Prisons the authority to set the special assessment payment schedule. However, the special assessment was paid in full before Dawkins surrendered for service of his sentence. Accordingly, we need not consider this issue.