**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Jerome BLOUNT,**
**Defendant–Appellant.**

No. 03–4332.

United States Court of Appeals,
Fourth Circuit.

April 12, 2004.

Argued: Feb. 24, 2004.

Decided: April 12, 2004.

**ARGUED:** Christian Lee Connell, Norfolk, Virginia, for Appellant. Stephen Westley Haynie, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Norfolk, Virginia, for Appellee.

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINSON and Judge DUNCAN joined.

## OPINION

NIEMEYER, Circuit Judge:

William Blount was convicted of obstructing the due administration of justice by threats and force during the courtroom sentencing of his mother, in violation of 18 U.S.C. § 1503, and of assaulting, impeding, or intimidating a deputy United States Marshal and a court security officer while engaged in their official duties, in violation of 18 U.S.C. § 111(a)(1). The district court sentenced Blount to 46 months' imprisonment and ordered him to pay restitution of $3,506 for the medical expenses incurred by an injured court security officer.

On appeal, Blount challenges two evidentiary rulings made by the district court during trial and an eight-level enhancement found by the district court during sentencing because the offense involved causing physical injury in order to obstruct justice. For the reasons that follow, we affirm.

I

Following a seven-year investigation for income tax fraud, Emma Blount, who was in the business of preparing income tax returns and who was the mother of Wil-liam Blount (the defendant in this case), was indicted in a multi-count indictment for preparing false income tax returns. Mrs. Blount pleaded guilty to one count pursuant to a plea agreement in which the government agreed to grant her son Blount, among others, immunity from prosecution. On October 7, 2002, Mrs. Blount appeared for sentencing before United States District Judge Jerome B. Friedman in the Eastern District of Virginia, and Blount was in the courtroom with other family members. The Sentencing Guidelines called for a sentence of Mrs. Blount in excess of the five-year maximum sentence for the count to which she pleaded guilty, and it appeared probable to the parties that the district court would sentence her to five years' imprisonment. During allocution, Mrs. Blount stood next to her counsel behind the defense table and urged Judge Friedman not to sentence her to five years because of her poor health condition (hypertension and high blood pressure). She acknowledged to Judge Friedman that she had done wrong, but she claimed that in light of her health, a 60–month sentence would amount to a death sentence. She stated that she did not believe that her crimes merited a death sentence.

Blount, who was sitting in the public benches behind the well of the court, became agitated and began to make increasingly loud threats, shouting repeatedly to the judge, "Ya'll better hope she don't die; ya'll better hope she don't die." These outbursts brought the proceedings to a standstill. Court Security Officer Orlando Johnson directed Blount in a polite but forceful manner, "Sir, stand up and get out." As Blount continued to shout his warnings and to threaten, "I'll get you" or "You'll be sorry," Officer Johnson and Deputy United States Marshal Nick Prof-

fitt moved to escort Blount from the courtroom. As the security officers led Blount toward the exit, Blount backpedaled, continuing to face the front of the courtroom and to shout, "My business ain't no front. BLT Landscaping [a target of the tax fraud investigation] ain't no front. I'm a football player." By the time Blount reached the exit, he was in such an agitated state that the security officers retrieved their handcuffs to restrain him.

While Blount was still at the exit to the courtroom, Mrs. Blount fainted and collapsed face down on the floor at the defense table. As several people called out that Mrs. Blount had fallen, Blount broke free from the security officers and rushed toward the front of the courtroom. Believing that Blount was charging the bench, Officer Johnson and Deputy Marshal Proffitt raced after him, reaching him near the podium and tackling him only after he had passed by his mother on the way to the bench area, knocking the podium on top of his mother. Judge Friedman pressed the panic button at the bench and hastened from the courtroom with his law clerk. The security officers wrestled Blount to the ground in the well of the courtroom in front of counsel's tables and handcuffed him there. During the fracas, Officer Johnson struck his chin on the podium, suffering a fractured tooth and a laceration under his lip that required seven stitches at a nearby hospital.

For his outburst and conduct, Blount was indicted in three counts for (1) obstructing the due administration of justice by threats and force directed against the court; (2) forcibly interfering with a court security officer and inflicting bodily injury; and (3) forcibly interfering with a U.S. Marshal, in violation of 18 U.S.C. §§ 1503, 111(b), and 111(a)(1), respectively. The jury convicted Blount on Counts 1 and 3 and on a lesser included offense of Count 2

for simply forcibly interfering with a court security officer, finding that Blount did not cause injury to Officer Johnson. At sentencing, the district court increased Blount's offense level by eight levels under U.S.S.G. § 2J1.2(b)(1) (providing for an eight-level enhancement when "the offense involved causing or threatening to cause physical injury to a person . . . in order to obstruct the administration of justice"). In reaching this conclusion, the court stated:

> In this case, it is true that the jury found the defendant guilty of the lesser included offense [of Count 2] . . . indicat[ing] they did not find that he caused bodily injury.
>
> However, when you look at that language in context of the instructions, it means a willful and intentional infliction of injury upon Officer Johnson.
>
> In this case, the Court is of the opinion that the misconduct of the defendant set in action by his rushing toward the bench when his mother collapsed and the contact he had with the marshals, flailing his arms, pushing people, that certainly was conduct in which one could foresee could cause injury to a court security officer.
>
> This Court believes that in this instance, a negligent type of standard governs. The actions of the defendant, an unbroken chain of circumstances, were reasonably calculated to cause injury to court security officers attempting to protect the judge and the judicial process.
>
> And I, therefore, believe by a preponderance of the evidence that he did cause physical injury to Officer Johnson. The Court believes the eight-level enhancement is appropriate, and the defendant's objection [to the enhancement] is overruled.

From the judgment of conviction, Blount appealed, challenging the sentencing en-

hancement, as well as two evidentiary rulings made during trial.

## II

In his most substantial argument, Blount contends that the district court misconstrued U.S.S.G. § 2J1.2(b)(1) (providing in relevant part for an eight-level enhancement if the offense "involved causing . . . physical injury to a person . . . in order to obstruct the administration of justice") by ignoring the requirement that the injury must have been caused *"in order to"* obstruct the administration of justice and by applying a "negligence—proximate cause—analysis." Properly read, according to Blount, the guideline requires the government to prove that "the defendant must have intended to cause injury." Blount maintains that Officer Johnson sustained his injuries inadvertently while trying to tackle Blount and that "there was absolutely no evidence at trial to suggest that Blount intended to injure [Officer] Johnson in order to obstruct the administration of justice."

In applying U.S.S.G. 2J1.2(b)(1), the district judge borrowed a causation analysis from tort law, imputing to Blount any injury foreseeable and resulting from "an unbroken chain of circumstances." In concluding that this standard was satisfied by the facts in this case, the court observed:

> The question is whether or not but for the misconduct of [Blount] would Mr. Johnson have sustained his injury? Don't we have an unbroken chain of circumstances sparked by [Blount's] misconduct that directly resulted in Officer Johnson's being injured?

> \* \* \*

> The actions of the defendant, an unbroken chain of circumstances, were reasonably calculated to cause injury to court security officers attempting to protect

the judge and the judicial process. And I, therefore, believe by a preponderance of the evidence that he did cause physical injury to Officer Johnson.

We review the district court's legal interpretations *de novo* and its factual findings for clear error. *See United States v. Dawkins,* 202 F.3d 711, 714 (4th Cir.2000).

The relevant portion of § 2J1.2 of the Sentencing Guidelines provides:

> If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels.

U.S.S.G. § 2J1.2(b)(1). The district court did not reach the question of whether Blount *"threatened* to cause" physical injury in order to obstruct the administration of justice because it concluded that Blount actually "caused" physical injury to Officer Johnson in order to obstruct the administration of justice. Blount focuses on the language of this guideline—causing physical injury to obstruct justice—to contend that there is no evidence to indicate that Blount *intended* to injure Officer Johnson: "He must *intend* to cause the injury as a means to obstruct justice." (Emphasis added).

In giving the language of U.S.S.G. § 2J1.2(b)(1) a natural reading, we agree with Blount that its requirements include an element of intent. The guideline requirements are not satisfied by showing simply that the defendant caused physical injury, a showing that would not necessarily need to include intent. Rather, under the guidelines as written, the defendant must cause physical injury *for the purpose* of obstructing justice. This purpose of obstructing justice not only imposes an intent requirement on "causing physical injury," but it also narrows that intent such that the injury must be caused

to obstruct justice, not for some other purpose. While causing physical injury must stem from the specific intent to obstruct justice, the intent to cause physical injury can be general—an intent that anticipates some unparticularized form of physical injury—so long as the defendant had the specific purpose of obstructing justice. Thus, in order for § 2J1.2(b)(1) to apply, the government must show that Blount caused physical injury with the specific intent to obstruct justice and a general intent to cause physical injury of an unparticularized nature. Drawing on principles common to criminal and civil law to define this general intent, we conclude that the defendant must have a state of mind—while focused on the purpose of obstructing justice—in which he *knows* that his conduct will cause physical injury, or he *desires* to cause physical injury, or he *believes* that physical injury is substantially certain to result from his conduct. *Cf., e.g.,* Model Penal Code § 2.02(2)(a) (stating that a defendant acts purposely if "it is his conscious object to engage in conduct of that nature or to cause such a result" and, if the conduct involves attendant circumstances, "he is aware of the existence of such circumstances or he believes or hopes that they exist"); Restatement (Second) of Torts § 8A (defining intent as the actor's *desire* "to cause [the] consequences of his act" or his *belief* that "the consequences are substantially certain to result from it").

Up until this point, the analysis apparently supports Blount's position. But Blount argues further that, to be subject to the enhancement in § 2J1.2(b)(1), the government must also prove that the defendant had a *specific* intent to cause the consequences *that actually resulted.* On this further point, we find Blount's argument unsupported by the text of the guideline. The language of the guideline does not require that the physical injury that actually resulted be the injury that the defendant *specifically* intended when undertaking his conduct. Absent a specific intent requirement, we read § 2J1.2(b)(1) to require proof of only general intent of the type defined by the common law. Applying this understanding of general intent in the context of § 2J1.2(b)(1), we summarize that in order to impose the offense-level enhancement, the government must show that the defendant's obstruction of justice resulting in physical injury be accompanied by (1) the defendant's *knowledge* that physical injury will result from the obstructive conduct, *or* (2) the defendant's *desire* to cause physical injury to obstruct justice, although not necessarily the same injury that was actually caused, *or* (3) the defendant's *belief* that, in obstructing justice, physical injury is substantially certain to result from his conduct. The *actual consequences* of his actions are looked at only to determine whether they fall within the scope of the general intent, not to define that scope. *Cf. generally* Clark & Marshall, A Treatise on the Law of Crimes §§ 5.02–5.04 (Melvin F. Wingersky ed., 6th ed.1958); Prosser & Keeton on Torts 33–39 (5th ed.1984).

The district court did not focus particularly on intent but rather on an analog in principles of causation. The court found that Blount caused physical injury in order to obstruct justice because physical injury resulted from an "unbroken causation chain of circumstances" emanating from his deliberate and violent conduct. In other words, Blount deliberately initiated a violent charge to the front of the courtroom not simply to speak his mind—as he had already done and continued to do—but now, out of anger that his mother had collapsed, to disrupt the proceedings through some unparticularized form of violent conduct aimed at causing physical injury. Consistent with Blount's earlier an-

nouncement that he was a football player, his actions were those of one who intended to act physically by tackling, punching, or otherwise striking court personnel. The district court implicitly found that the injury to Officer Johnson lay within the scope of intent inferred from Blount's conduct, and we agree with this conclusion, even though our analysis is tailored to address the focus of Blount's argument that he lacked the requisite intent.

To begin with, Blount disrupted the judicial proceedings by "pointing and gesturing at Judge Friedman" and repeatedly shouting "You better hope she don't die, you better hope she don't die. You don't know what the f—— you're doing." He followed up these threats by declaring, "I'll get you" or "You'll be sorry." Mrs. Blount's fainting then triggered an emotion in Blount that elevated his threatening talk to fulfillment in violence, and he bolted from the security officers and charged the bench. At that point, the nature of Blount's unculminated actions could only be violent, and from these actions and the overall circumstances, a court could infer that Blount held an *intent* in which he desired that any of several court officials would sustain physical injury or believed that physical injury was substantially certain to follow. Indeed, the record shows that several witnesses perceived that Blount's conduct was aimed at harming Judge Friedman. Officer Johnson and Deputy Marshal Proffitt testified that, during the initial stage of the disruption, Blount was directing his shouted warnings "toward Judge Friedman." And when Blount actually charged for-ward, the Assistant U.S. Attorney felt "that [Blount] was trying to get to the front of the courtroom to attack either myself or the judge." Officer Johnson shared this view, testifying as follows:

A. My concentration was to stop [Blount] at all means.

Q. Why did you want to stop him at all means?

A. Based on his verbal comments and with Judge Friedman still on the bench, I had to stop him.

Q. Where did you think he was going?

A. Toward the bench. Earlier due to the judge's decisions not being in favor of Ms. Blount, I felt that he was going toward Judge Friedman.

Judge Friedman himself clearly felt physically threatened, as did his law clerk. The law clerk testified that she feared that Blount "was running forward toward the judge and towards us in the front. The podium had fallen over. I didn't know what was going to happen next." Judge Friedman pressed the panic button underneath the bench to summon additional U.S. Marshals and hastened with his law clerk out of the courtroom, instructing her to call 911 as they went.

Although Blount testified during trial that he was running to aid his fallen mother and not to injure anyone in the courtroom, the evidence contradicts his assertions. The witnesses uniformly testified that Blount did not go to his mother but was charging the bench; he came forward "until he was actually past his mother in front of the defense table." The Assistant United States Attorney testified that after security officers grabbed Blount, he continued forward and "was completely in front of [his mother]. He had passed her. He was past her at the point that he was taken to the ground." And the security officers testified that they wrestled Blount to the floor and handcuffed him in front of the podium in the well of the court. Moreover, during this period, Blount was asked "repeatedly, at least five or six times ..., 'What is your mother's condition, and what type of medication is she on?'" Not only did Blount refuse to answer, but[h]e was

continuing to shout about [other things] ... [a]nd he was completely nonresponsive in terms of providing ... whatever medical information he might have possessed as her son in order to help her with her medical situation." In rejecting Blount's explanation for his conduct given during trial, the district court's findings to sustain a § 2J1.2(b)(1) enhancement were amply supported by evidence and therefore were not clearly erroneous.

In sum, the conduct on which the district court rested the sentencing enhancement revealed that Blount held a general intent to cause unspecified physical injury, a consequence that actually occurred with the injury to Officer Johnson. While Blount certainly can argue that he did not *specifically* intend to injure Officer Johnson in the manner in which the officer was injured, his argument that he did not intend to cause any physical injury to obstruct justice falls flat in face of the evidence. Indeed, one would conclude that after Blount's mother fainted, Blount initiated a course of violent conduct directed to obstruct justice by tackling someone, hitting someone, or otherwise injuring court personnel to disrupt the proceedings. While he may not have identified for himself or manifested to the world the *specific* injury that he intended, any physical injury within the scope of his general intent to cause physical injury rendered him liable to the enhancement.*

Moreover, § 2J1.2(b)(1) provides for enhancement not only for physical injury

*caused* to obstruct justice, but also for *threats* to cause physical injury to obstruct justice. *See* U.S.S.G. § 2J1.2(b)(1) (providing for the enhancement when "the offense involved ... threatening to cause physical injury"). While the district court did not rely on the threat of injury, having found actual injury, if we were to disregard Officer Johnson's injury, the same evidence supporting Blount's intent to cause physical injury in order to obstruct justice would support application of § 2J1.2(b)(1) for threatening to cause physical injury.

At bottom, we conclude that the district court properly applied § 2J1.2(b)(1) to the circumstances of this case to enhance Blount's offense level. *See also United States v. Cunningham*, 54 F.3d 295, 302 (7th Cir.1995) (stating that U.S.S.G. § 2J1.2(b) "mandates calculating the sentence using a higher offense level any time an offense among those to which § 2J1.2 is applicable involves real or threatened physical injury"); *United States v. Duarte*, 28 F.3d 47, 48 (7th Cir.1994) (holding that the "function of section 2J1.2(b)(1) ... is to distinguish threats of physical injury or property damage from lesser threats, rather than to introduce refined distinctions within the broad category of obstruction of justice" (citations omitted)).

### III

Blount also contends that the district court abused its discretion under Federal Rule of Evidence 404(b) in making two

---

* Indeed, the scope of intent borrowed from the common law could be applied to this case with yet a broader result. Under the principle of "transferred intent," an actor who intends to harm A and in fact harms B is nonetheless held to intend to harm B. *See* Clark & Marshall, The Law of Crimes § 5.04; Restatement (Second) of Torts §§ 8A, 8A illus. 1, 13; Prosser & Keeton on Torts 37–39. Even though our conclusion in this case does not require application of this principle, its application would be consistent with the Sentencing Commission's purpose of enhancing those obstructions of justice that are committed with violence and cause physical injury. Indeed, when bodily injury actually "*result[s]*," the guideline notes that an upward departure "may be warranted." U.S.S.G. § 2J1.2, cmt. 4 (emphasis added).

evidentiary rulings admitting evidence during trial.

■ First, Blount contends that the testimony of the district court's deputy clerk relating to an incident in the Clerk's office before trial should not have been admitted under Rule 404(b). Before trial in this case, Blount and Mrs. Blount were in the Clerk's office to obtain permission for Mrs. Blount to go to Norfolk, Virginia, to see her doctors. As the deputy clerk tried to explain her limited authority, stating that she would need to get permission from others, Blount became agitated and angry, yelling at the deputy clerk that if his mother "didn't get to go see her doctors, she was going to die." The encounter escalated to the point that the deputy clerk called a court security officer, who escorted Blount from the building. The court admitted this evidence under Rule 404(b) to allow the government to prove that the defendant's similar conduct in the courtroom was no accident and that Blount held an intent that carried a general disregard for the court and its personnel in the handling of his mother's tax fraud case.

Although Rule 404(b) prohibits the admission of general character evidence to prove that action on a particular occasion was in conformity with a general character trait, Rule 404(b) is still a rule of inclusion providing explicitly for the admission of the type of evidence offered by the government. It authorizes the admission of evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b); *see also United States v. Queen*, 132 F.3d 991, 994 (4th Cir.1997); *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir.1996); *United States v. Russell*, 971 F.2d 1098, 1106 (4th Cir.1992); *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir.1988). We are unable to conclude that the district court abused its discretion in admitting the evidence of the incident in the Clerk's office.

■ Second, Blount contends that under Rule 404(b), evidence about his mother's plea agreement should not have been admitted. The district court permitted the government to question Blount on cross examination about his mother's plea agreement, which had given Blount immunity in the underlying tax fraud case, and how the agreement affected him. Blount testified in response to these questions that his mother negotiated the plea agreement to protect the family (including Blount) from prosecution in the tax fraud case "because she loves us."

This inquiry into the plea agreement negotiated by Blount's mother did not attempt to elicit evidence of prior acts covered by Rule 404(b). Rather, the plea agreement evidence was directly relevant to Blount's intent and motives in this case. When Blount charged the court during his mother's sentencing, witnesses testified that he was shouting, "[A]ll [my] mother ever did was try and help people.... [S]he took the deal just to protect us, just to save us." Because questioning Blount about his motive for charging the court related not only to the intent element but also to the context of the crimes for which he was charged, the government was only pursuing evidence relevant to the issues *in this case* and not offering evidence of prior acts under Rule 404(b). We reject Blount's argument that the district court abused its discretion in admitting the evidence.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*