**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-5053**

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

   v.

MICHAEL R. BENNETT,

     Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:10-cr-00045-TDS-1)

Submitted:  June 13, 2011     Decided:  June 23, 2011

Before NIEMEYER, KING, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas N. Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant.  Ripley Rand, United States Attorney, Robert M. Hamilton, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pursuant to a written plea agreement, Michael R. Bennett pled guilty to three counts of wire fraud, in violation of 18 U.S.C. § 1343 (2006) (Counts One, Fourteen, and Fifteen), and one count of making a false statement, in violation of 18 U.S.C. § 1001(a)(3) (2006) (Count Twenty-One). We affirm.

The Government charged Bennett based on his scheme to defraud employers and background screening companies of money and property by misrepresenting to those victims that he and his company, Workplace Compliance, Inc. ("WCI"), provided drug testing services in compliance with U.S. Department of Transportation ("DOT") regulations. Specifically, Bennett and WCI fraudulently purported to provide drug testing services to employers covered by DOT regulations 49 C.F.R. § 40.1 — .413 (2010). Those regulations require that covered workers submit to drug screening reviewed by a licensed physician trained in substance abuse and designated as the Medical Review Officer ("MRO"). 49 C.F.R. §§ 40.3 and 40.121. Under the regulations, if a drug screening returns a non-negative result, the MRO receives the result, interviews the worker, and determines whether the result indicates illicit drug use. Here, the doctor identified as the MRO for WCI neither held certification as an MRO nor acted as MRO for WCI. Rather, Bennett — who is not a

2

physician — reviewed drug screenings and performed all duties required of the MRO.

Generally, this court reviews a sentence for reasonableness, using an abuse of discretion standard of review. Gall v. United States, 552 U.S. 38, 51 (2007). However, because Bennett did not raise this objection in the district court, this court reviews for plain error.[1] See Fed. R. Crim. P. 52(b); United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). To prevail on a claim of unpreserved error, Bennett must show that error occurred, was plain, and affected his substantial rights. United States v. Massenburg, 564 F.3d 337, 342-43 (4th Cir. 2009). Even if such error is found, it is within this court's discretion to notice the error, and we do so "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 343 (internal quotation marks omitted).

The Guidelines direct courts to determine a defendant's offense level for fraud commensurate with the amount

---

[1] At sentencing, Bennett did not object to the loss amount used to calculate his Guidelines range but only the amount used to determine restitution. Bennett asserts that his objection below preserved his challenge to the loss calculation. However, we have held that objection on one ground does not preserve claims on different grounds. United States v. Massenburg, 564 F.3d 337, 342-43 & n.2 (4th Cir. 2009) (reviewing unpreserved Rule 11 error).

of loss involved in the fraud.  See U.S. Sentencing Guidelines Manual ("USSG") § 2B1.1(b)(1) (2009).  In the presentence investigation report ("PSR"), the probation officer added twelve levels to Bennett's offense level based on the total provable loss to victims of $337,030.[2]  With a total offense level of eighteen and a criminal history category of I, Bennett earned a Guidelines range of twenty-seven to thirty-three months of imprisonment.  USSG ch. 5, pt. A (sentencing table).  The probation officer calculated restitution of $398,335 based on the amount of loss attributable to fifteen specific victims. Bennett noted an objection only to the amount of restitution. At the sentencing hearing, the district court spent considerable time resolving the restitution issue, then imposed a below-Guidelines sentence of twenty-two months, and $209,030 in restitution.

On appeal, Bennett asserts that the district court committed procedural sentencing error in its calculation of loss and therefore erred in establishing his recommended Guidelines range.  He contends that because some of the drug testing he

---

[2]  The probation officer noted that although Bennett defrauded a broad range of victims, the Government focused on the fraud perpetrated against fifteen victims in the healthcare and transportation industries in computing "total loss" for purposes of USSG § 2B1.1(b)(1)(G).  The probation officer noted that Bennett purported to provide these specified victims with services mandated by federal regulation.

contracted to perform did not require DOT compliance, victims did not suffer a loss as to those tests. Bennett concedes that under USSG § 2B1.1, loss may be actual, intended, or estimated loss to victims, or gain to defendant. USSG § 2B1.1 cmt. n.3(A), (B). He asserts that in this instance, loss is only the financial gain he received for DOT-regulated testing that he failed to provide. Bennett further argues that because the Government failed to submit evidence denoting what quantum of testing was DOT-regulated as compared to unregulated, the district court had no factual basis on which to base its loss calculation for purposes of determining his offense level.[3] As support for his argument, Bennett relies on this court's opinion in United States v. Dawkins, 202 F.3d 711 (4th Cir. 2000).

Dawkins, a former federal employee, was required to provide periodic certification to retain disability benefits. 202 F.3d at 713. Dawkins fraudulently certified that he was unemployed, even though he received payment as a courier in a drug conspiracy. The trial court calculated loss for sentencing

---

[3] Because Bennett did not raise this objection below, but in fact agreed to the amount of loss for USSG § 2B1.1 purposes, neither the Government nor the district court were put on notice of the need to closely examine the loss amount. Bennett's conduct below comes perilously close to inviting error. See United States v. Hickman, 626 F.3d 756, 772 (4th Cir. 2010) ("Under ordinary circumstances, this court will not consider alleged errors that were invited by the appellant.").

5

purposes as the total payment Dawkins received from the government while participating in the drug conspiracy, citing former USSG § 2F1.1 (deleted by 2001 consolidation with § 2B1.1). This court disagreed, concluding that "the loss was only the amount fraudulently claimed" rather than the full amount of payment. Dawkins, 202 F.3d at 714-15.

We are persuaded by the Government's brief that Bennett's reliance on Dawkins is misplaced and this case is controlled by USSG § 2B1.1 cmt. n.3(F)(v)(I). That application note directs that, "[i]n a case involving a scheme in which services were fraudulently rendered to the victim by persons falsely posing as licensed professionals," "loss shall include the amount paid for the . . . services . . . rendered with no credit provided for the value of those . . . services." Here, Bennett posed as a doctor in purporting to provide the services of an MRO. Therefore, he is not entitled to the reduction applied in Dawkins. See United States v. Kieffer, 624 F.3d 825, 834 (8th Cir. 2010) (applying USSG § 2B1.1 cmt. n.3(F)(v)(I) to defendant who posed as licensed attorney).

Accordingly, we conclude the district court did not plainly err when it adopted the PSR's calculation of loss for purposes of determining Bennett's offense level. We therefore affirm Bennett's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately

6

presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED