**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4427**

───────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

DARLENE M. ALTVATER,

              Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Deborah K. Chasanow, District Judge.
(8:12-cr-00065-DKC-1)

───────────

Argued: September 16, 2014     Decided: November 18, 2014

───────────

Before MOTZ and KING, Circuit Judges, and DAVIS, Senior Circuit
Judge.

───────────

Affirmed in part; vacated and remanded in part by unpublished
opinion.  Senior Judge Davis wrote the opinion, in which Judge
Motz and Judge King joined.

───────────

**ARGUED:** Gerald Chester Ruter, Baltimore, Maryland, for
Appellant.  Hollis Raphael Weisman, OFFICE OF THE UNITED STATES
ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:** Rod J.
Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

A jury convicted Darlene M. Altvater of two counts of making false statements in an application for worker's compensation benefits, in violation of 18 U.S.C. § 1920. The district court sentenced Altvater to five months of imprisonment, followed by five months of home detention and three years of supervised release, and ordered that she pay restitution in the amount of $59,592.58. On appeal, Altvater challenges the district court's determination of the loss amount under the Sentencing Guidelines and the court's calculation of the amount of restitution. For the reasons that follow, we affirm in part and vacate and remand in part.

I.

A.

Altvater was an employee of the United States Postal Service when she was injured on the job in December 2000. Her claim for federal worker's compensation benefits was accepted in January 2001.

For each subsequent year, Altvater filled out a "1032 form" to continue receiving benefits. In September 2005, she reported on her 1032 form that she had been involved in a business enterprise beginning in April 2005. She described the enterprise as a family business, and indicated that she received no payment for her work. Altvater repeated this information on

2

her forms for 2006, 2007, and 2008. She averred that she answered phones, spoke with customers, and input data into a computer for up to fifteen hours a week, but received no earnings. On her 2009 and 2010 forms, however, Altvater did not report any involvement in a business. In fact, from April 2005 to December 2011, Altvater owned an interest in a spa and gym, and she worked there for several hours each week.

B.

A federal grand jury returned a superseding indictment against Altvater on September 5, 2012, charging her with two counts of committing fraud to obtain federal worker's compensation benefits. The indictment alleged that on or about November 24, 2009, and again on or about December 9, 2010, Altvater applied for benefits and knowingly made a false or fraudulent statement to receive benefits to which she was not entitled and which exceeded $1,000.

Altvater proceeded to trial, during which Angella Winn, a district director for the Office of Workers' Compensation Programs ("OWCP"), testified. Winn explained that OWCP provides compensation to injured federal workers to make them whole. For example, if a federal worker is injured and is only able to work four hours a day after the injury, OWCP pays that employee for the other four hours of a full-time work schedule.

3

Winn further explained that, each year, OWCP provides the injured federal worker with a 1032 form to support continuing eligibility for benefits. The 1032 form requires the claimant to report any outside employment from the preceding fifteen months, the rate of pay received from that employment, and any ownership interest in a business enterprise maintained in the preceding fifteen months. In addition, the 1032 form requires the claimant to notify OWCP of any improvement in her medical condition. OWCP reviews the 1032 form to determine whether benefits must be reduced based on a change in the claimant's employment or improvement in her condition.

Following Winn's testimony, the jury found Altvater guilty of both counts.

In the presentence report ("PSR"), the probation officer recommended an eight-level increase in the offense level based on the loss figure calculated by the government, namely $98,973.70. See U.S.S.G. § 2B1.1(b)(1)(E). The probation officer also recommended that restitution be equal to the loss amount.

The government's loss calculation was based on a memorandum prepared by Winn. Winn calculated the loss by first estimating Altvater's imputed earnings from the spa between April 2005 and December 2011. Next, she determined the amount of benefits to which Altvater would have been entitled had she reported that

4

income.  Finally, Winn subtracted the amount of benefits to which Altvater was actually entitled between April 2005 and December 2011 from the total amount of benefits she received during that period.

At the sentencing hearing, Winn testified that her estimate of Altvater's earnings—i.e., her wage earning capacity ("WEC")—was derived from information provided by the State of Maryland Department of Labor, Licensing, and Regulation.  Winn obtained the rate of pay for a first-line supervisor or manager of personal service workers—the job with most similar duties to those performed by Altvater—and then adjusted that amount for various economic factors throughout the relevant time period.

The government argued at sentencing that Altvater's employment and (imputed) earnings in the years prior to the charged conduct, during which Altvater worked but failed to report her income, constituted relevant conduct for the purpose of calculating loss.  The district court disagreed, however, reasoning that the government had failed to charge a scheme and that the loss figure should be calculated beginning August 2008, or fifteen months prior to the execution of the false 1032 form, in November 2009, on which count one of the indictment was based.  The court, therefore, requested that the government calculate the amount of benefits that Altvater received between August 2008 and December 2011, when she stopped receiving

5

benefits. Notably, the court included payments subsequent to the execution of the false 1032 form in December 2010; the government explained that, had Altvater reported her income from the spa, OWCP would have reduced her benefits going forward to recoup prior overpayments.

The government ultimately determined that Altvater received $98,359.89 in benefits between August 2008 and December 2011. Based on her WEC, however, she had only been entitled to $35,667.40. Accordingly, the government asserted, the resultant loss was $62,692.49.

The district court accepted the government's calculation of the loss amount, and applied a six-level increase in the offense level. See U.S.S.G. § 2B1.1(b)(1)(D). The court explained that using Altvater's WEC to determine the loss was appropriate because the government did not have information on her actual income from the spa.

After determining an advisory Guidelines range of ten to sixteen months of imprisonment, the court imposed a split sentence, sentencing Altvater to five months of imprisonment, followed by five months of home detention and three years of supervised release. The court again asked the government to recalculate the restitution amount, and set another hearing date to resolve that issue.

In a supplemental memorandum regarding restitution, the government calculated the loss incurred during three time periods: (1) from August 2008 to May 2009, (2) from May 2009 to April 2010, and (3) from April 2010 to December 2011. Adding the loss amounts from each time period, the government requested that restitution be ordered in the amount of $59,592.58.

The court accepted the government's proposed calculation, and ordered that Altvater pay $59,592.58 in restitution. Altvater timely appealed.

## II.

### A.

Altvater first argues that the district court erred in relying on her WEC to calculate loss. She contends that, because the government has substantial investigative powers to accurately assess her spa income, it "should have introduced at the sentencing hearing evidence of those earnings," instead of relying on standardized economic data about what a typical spa worker would have made. Altvater Br. 30. She maintains that she had no earnings from her work at the spa, and thus income may not be properly imputed to her.

In reviewing the district court's loss calculation under the Sentencing Guidelines, "'we review the district court's legal conclusions de novo and its factual findings for clear error.'" United States v. Manigan, 592 F.3d 621, 626 (4th Cir.

7

2010) (quoting United States v. Layton, 564 F.3d 330, 334 (4th Cir. 2009)).  We will "find clear error only if, 'on the entire evidence,' [we are] 'left with the definite and firm conviction that a mistake has been committed.'"  Id. at 631 (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001)).

"'In a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses.'"  United States v. Dawkins, 202 F.3d 711, 714 (4th Cir. 2000) (quoting U.S.S.G. § 2F1.1 cmt. n.8(d)).  "[W]hen determining losses for sentencing purposes, a court must subtract the amount of money or benefits to which a defendant is legitimately entitled from the amount fraudulently claimed."  United States v. Miller, 316 F.3d 495, 499 (4th Cir. 2003); see also Dawkins, 202 F.3d at 715.  "In calculating the total loss attribution, a district court 'need only make a reasonable estimate of the loss.'"  United States v. Jones, 716 F.3d 851, 860 (4th Cir. 2013) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)).  The government bears the burden of proving the loss amount.  Dawkins, 202 F.3d at 714.

Applying the above standard, we reject Altvater's argument that she should not be held accountable for having earned any money while working at the spa.  Altvater was a part owner in the spa.  The "income" she earned would not necessarily have been a normal paycheck for hours worked; rather, it was the

8

amount of money she saved as an owner by not having to pay a third party. In other words, she was able to pay herself a larger amount of income out of her business because she did not need to pay someone to do the work that she did. Thus, even though she did not receive a paycheck, income from her work at the spa was properly imputed to her.

Given that Altvater persisted in her assertion that she received no income from her spa business, the district court was required to estimate her earnings in order to calculate the amount of benefits to which she was lawfully entitled. The amount of money Altvater would have had to pay another employee to do the work that she did was a reasonable substitute for her actual earnings. See Jones, 716 F.3d at 860. The district court, therefore, did not err in relying on Altvater's WEC to determine the loss amount.

B.

Altvater next argues that the district court erred in ordering restitution for the period between December 2010, when she executed the second false 1032 form, and December 2011, when she stopped receiving benefits. She contends that she may only be ordered to pay restitution for the offense of conviction, and as the 1032 form executed in 2010 covered just the preceding fifteen months, the restitution amount should not have included payments received after that time.

9

We review a restitution order for abuse of discretion. United States v. Hoyle, 33 F.3d 415, 420 (4th Cir. 1994).

Under the Mandatory Victims Restitution Act, the district court must order the defendant to make restitution to victims of an offense against property. 18 U.S.C. § 3663A(a), (c)(1)(A)(ii). The statute "'authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996) (quoting Hughey v. United States, 495 U.S. 411, 413 (1990)). In other words, a court may only award restitution for loss that results from "'conduct underlying an element of the offense of conviction.'" United States v. Davis, 714 F.3d 809, 813 (4th Cir. 2013) (quoting Blake, 81 F.3d at 506).

We agree with Altvater that she may not be held liable in restitution for payments received after December 2010, as the receipt of payments after that time is not conduct that forms the offense of conviction. The superseding indictment charged Altvater with perjury on the November 24, 2009 1032 form and again on her December 9, 2010 1032 form. The material falsehood on each 1032 form was that Altvater failed to report that she had been employed and earning income for the previous fifteen months. In this case, therefore, the acts of perjury relate back to the fifteen months prior to the filing of the 1032

10

forms, and thus restitution may only be ordered for those periods. This "look-back" approach in calculating restitution in § 1920 prosecutions is precisely the approach employed by the government and endorsed by this Court in Dawkins. See Appellee's Brief in No. 99-4240 (4th Cir.), 1999 WL 33607403, at *4-5 (July 13, 1999) ("Dawkins received a total of $64,356.00 in disability benefits from November 18, 1995 [fifteen months preceding the filing of the first perjurious 1032 form on February 18, 1997,] through December 1, 1997 [the date Dawkins filed the second perjurious form 1032], the period covered by his two false form 1032s.") (bracketed material added); Dawkins, 202 F.3d at 714 ("The district court found that the loss for sentencing purposes was the total amount of benefits paid to Dawkins during the time covered by the February and December 1997 1032 forms, or $64,536." [sic]).

Accordingly, we conclude that the district court committed an error of law and thereby abused its discretion in ordering restitution for the period between December 2010 and December 2011, and we remand for a reduction in the amount of restitution. On remand, as defense counsel conceded at oral argument, the district court may, in its discretion, properly impose a fine (as it had expressly declined to do at sentencing in light of the amount of restitution it had imposed). See 18 U.S.C. § 1920.

11

III.

For the reasons set forth, we affirm in part and vacate in part the restitution order and remand this case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART