**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-4291**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUBEN CEJA-RANGEL, a/k/a Ruben Ceja,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Orangeburg. J. Michelle Childs, District Judge. (5:14-cr-00556-JMC-2)

_____

Submitted: April 28, 2017                                    Decided: May 4, 2017

_____

Before KING, DUNCAN, and AGEE, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Aimee J. Zmroczek, A.J.Z. LAW FIRM, LLC, Columbia, South Carolina, for Appellant. Beth Drake, Acting United States Attorney, J.D. Rowell, Assistant United States Attorney, Columbia, South Carolina; Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, Thomas E. Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Ruben Ceja-Rangel ("Ceja") of numerous charges related to his involvement in a kidnapping. On appeal, Ceja contends that the district court erred in denying several pretrial motions, that the district court erred in admitting into evidence the victim's proffer agreement with the Government, and that the Government committed prosecutorial misconduct. Finding no reversible error, we affirm.

I.

Ceja argues that the district court erred in denying two pretrial motions to suppress. Ceja contends that the victim's out-of-court identification should have been suppressed because the photographic line-up was impermissibly suggestive and that the admission of a firearm and badge recovered during a search violated his Confrontation Clause rights. Ceja further contends that the district court erred in denying his motion to exclude references to the cartel or a Mexican drug trafficking organization and in admitting into evidence the victim's proffer agreement with the government.

"When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal determinations de novo," construing "the evidence in the light most favorable to the prevailing party." *United States v. Lull*, 824 F.3d 109, 114-15 (4th Cir. 2016) (internal quotation marks omitted). Due process concerns arise "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). The defendant bears the burden of proof in challenging the admissibility of an

2

out-of-court identification. *See United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997). "First, the defendant must show that the photo identification procedure was impermissibly suggestive." *United States v. Saunders*, 501 F.3d 384, 389 (4th Cir. 2007). If the procedure was improper, we must "consider[] whether the identification was nevertheless reliable in the context of all of the circumstances." *Id.* at 389-90. Factors to be considered in evaluating the reliability of the identification include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

Assuming, as the district court did, that the identification procedure was unduly suggestive, we conclude that the victim's identification was reliable. The victim provided a description of Ceja prior to viewing the photographs, and the victim's description of an older Mexican male with black-gray hair and beard is consistent with the photographs of Ceja. While the victim identified only one of the two photographs containing Ceja's image with certainty, the victim thought the second photograph was also of Ceja. Additionally, while the victim was blindfolded for part of his captivity, he was not blindfolded when Ceja initially abducted him and the victim stated that Ceja was not wearing a mask. Moreover, the disputed identification occurred on the day of the victim's rescue.

3

Turning to Ceja's Confrontation Clause claim, Ceja contends that the district court erred in admitting a firearm and badge because law enforcement learned of that evidence through a codefendant who pled guilty and who did not testify at trial. We review an alleged Confrontation Clause violation de novo. *United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015). The Confrontation Clause "bars the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). A firearm and a police badge are neither testimonial statements nor witnesses at trial. *See United States v. Udeozor*, 515 F.3d 260, 268 (4th Cir. 2008) (noting the Confrontation Clause "applies to witnesses against the accused—in other words, those who bear testimony" (internal quotation marks omitted)). Thus, we conclude that the district court did not err in denying Ceja's pretrial motions to suppress.

Ceja also contends that the district court erred in denying his pretrial motion to exclude references to the cartel or a Mexican drug trafficking organization because such evidence amounted to an inappropriate ethnic stereotype. "We review [a district court's] evidentiary rulings for abuse of discretion." *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016). Reversal is warranted only if, in consideration of the law and facts of the case, the district court's determination "was arbitrary or irrational." *Id.* (internal quotation marks omitted). Moreover, evidentiary rulings are reviewed for harmless error, which requires us to determine "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not

substantially swayed by the error." *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012) (internal quotation marks omitted).

"[I]njection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial." *United States v. Garcia-Lagunas*, 835 F.3d 479, 488 (4th Cir. 2016) (internal quotation marks omitted). However, the Government did not introduce evidence of an ethnic stereotype—Ceja fails to cite to any portion of the record that even remotely suggests that he was associated with the cartel or drug trafficking because of his Mexican heritage. Instead, the victim testified that the cartel or a Mexican drug trafficking organization was involved in his kidnapping. To the extent that FBI agents testified that the cartel was not involved, the appropriate way to address the inconsistency was to cross-examine the victim about his claims. Moreover, we conclude that any error was harmless. The cartel references were not numerous, the victim identified Ceja as one of the kidnappers, and Ceja was arrested running from the house where the victim was held captive.

Ceja also contends that the district court erred in admitting into evidence the victim's proffer agreement with the Government because it unfairly bolstered the victim's credibility. We have held that a district court did not abuse its discretion in admitting a witness' plea agreement into evidence where there was (1) "no evidence that the government derived any improper advantage from [the] testimony concerning [the witness'] promise to be truthful," (2) the Government did not imply that it had special knowledge of the witness' truthfulness, (3) the district court issued a cautionary instruction, and (4) the Government did not make "improper use of the plea bargain

5

promise of truthfulness in closing argument." *United States v. Henderson*, 717 F.2d 135, 138 (4th Cir. 1983). The district court appropriately considered these factors. The court limited the use of the proffer and issued a cautionary jury instruction. While Ceja argues the Government improperly vouched for the victim's credibility, the Government did not reference the proffer agreement during closing argument to argue the victim's truthfulness, but rather informed the jury that the victim could still receive a prison sentence and that it was the province of the jury to determine the victim's credibility.

## II.

Ceja raises three arguments that the Government committed prosecutorial misconduct. Because Ceja failed to raise his arguments before the district court, we review his arguments for plain error. *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014). To prevail, Ceja "must show (1) that the [district] court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights, meaning that it affected the outcome of the district court proceedings." *Id.* (internal quotation marks omitted). If Ceja meets this burden, "we retain discretion whether to recognize the error and will deny relief unless the district court's error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

6

First, Ceja contends that the Government violated its *Brady*[1] obligations by failing to disclose the victim's plea agreement and that Ceja did not have access to the documents filed in the victim's criminal case. To succeed on his *Brady* claim, Ceja "must show that (1) the evidence is either exculpatory or impeaching, (2) the government suppressed the evidence, and (3) the evidence was material to the defense." *Catone*, 769 F.3d at 872 (internal quotation marks omitted). "Evidence is material only if it is likely to have changed the verdict." *Id.* at 871 (internal quotation marks omitted). We discern no *Brady* violation. The Government and the victim entered into a plea agreement after the victim testified at Ceja's trial. Ceja offers no evidence to support any conclusion that the Government secretly negotiated a plea agreement with the victim. *See Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008). Moreover, although the victim received a noncustodial sentence on his pending charges, "favorable treatment . . . does not, standing alone, demonstrate the existence of an implied agreement with [the Government]." *Id.* Additionally, evidence of a plea agreement would not have been material, as the Government offered overwhelming evidence linking Ceja to the kidnapping and Ceja questioned the victim about his proffer agreement with the Government.

Next, Ceja contends that the Government failed to correct the victim's false testimony, highlighting the numerous inconsistencies between the victim's statements to law enforcement, his testimony at the two trials,[2] and his answering numerous questions

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] Ceja's first trial ended in a mistrial.

7

by stating that he did not recall.  "[T]he Due Process Clause obliges the government not [to] knowingly use false evidence, including false testimony, to obtain a tainted conviction."  *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1449 (2016) (second alteration in original) (internal quotation marks omitted).  "Due process is violated regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected."  *Id.* (internal quotation marks omitted).  "The knowing use of perjured testimony constitutes a due process violation when there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. White*, 238 F.3d 537, 540-41 (4th Cir. 2001) (internal quotation marks omitted).

We conclude that Ceja has failed to satisfy his burden under plain error review.  "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Fields*, 763 F.3d 443, 461-62 (6th Cir. 2014).  Ceja fails to point to a single perjurious statement, instead relying on inconsistencies.  Moreover, Ceja questioned the victim about his inconsistent statements during cross-examination.  *See United States v. Joyner*, 201 F.3d 61, 82 (2d Cir. 2000).

Finally, Ceja contends for three reasons that the Government gave an improper closing and rebuttal argument.  First, Ceja argues the Government improperly vouched for the victim's credibility.  Second, Ceja asserts that the Government unfairly called his defense a sham.  Third, Ceja contends that Government relied on impermissible ethnic stereotypes by highlighting Ceja's status as an immigrant.

8

"We have held that it is error for the government to bolster or vouch for its own witnesses." *United States v. Lighty*, 616 F.3d 321, 359 (4th Cir. 2010). Vouching occurs when the prosecutor acts in a way that could lead the jury to believe that the prosecutor has a personal belief in the witness' credibility. *Id.* "[B]olstering is an implication by the government that the testimony of a witness is corroborated by information known to the government but not known to the jury." *United States v. Jones*, 471 F.3d 535, 543 n.3 (4th Cir. 2006) (internal quotation marks omitted). We conclude that the Government did not engage in impermissible vouching or bolstering. The Government relied on the trial evidence to argue that the victim was credible. Ceja made the victim's credibility a central issue in the case, and the Government needed to forcefully respond to Ceja's argument that the victim was not credible. Moreover, while the Government called Ceja's defense frivolous, this was done in the context of discussing the evidence admitted at trial.

We further conclude that the Government's lone reference to Ceja as an immigrant does not amount to reversible error. Generally, the Government should refrain from referring to a defendant's immigration status when it is of limited probative value. *Garcia-Lagunas*, 835 F.3d at 493. Here, however, Ceja opened the door to the Government's remark because he referred to himself as an honest migrant worker in his closing argument. *See United States v. McNatt*, 931 F.2d 251, 257-58 (4th Cir. 1991). We further conclude that any assumed error was harmless in light of the overwhelming evidence the Government introduced at trial. *See Garcia-Lagunas*, 835 F.3d at 493

(concluding admission of defendant's immigration status was harmless in light of overwhelming evidence defendant participated in conspiracy to distribute cocaine).

## III.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*