**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4748**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

COREY HAMMOND, a/k/a Grey Hammond,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:16-cr-00562-CCB)

Submitted: March 19, 2020                          Decided: July 27, 2020

Before WILKINSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion in which Judge Wilkinson and Judge Rushing joined.

Marc Gregory Hall, LAW OFFICES OF MARC G. HALL, P.C., Greenbelt, Maryland, for Appellant. Robert K. Hur, United States Attorney, Christopher J. Romano, Assistant United States Attorney, Jeffrey Hann, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

On March 8, 2018, a jury convicted Corey Hammond of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. The district court sentenced Hammond to a term of imprisonment of 240 months and 10 years supervised release. Raising five issues, Hammond appeals his conviction and sentence, challenging the district court's treatment of his pre-trial motion related to the disclosure of the government's potential use of a cell-site simulator; the admissibility of certain expert testimony about coded language; the admissibility of an old and allegedly irrelevant photograph; the district court's denial of his motion for a new trial; and his classification as a career offender in sentencing. For the reasons set forth below, we affirm the judgment of the district court.

I.

A federal grand jury returned a three-count, superseding indictment, charging Corey Hammond, Marcel Gardner and Jorge Rodriguez-Avitta with three offenses. Count One charged Hammond, Gardner and Rodriguez with one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged Gardner and Rodriguez with possession with intent to distribute five kilograms or more of cocaine. Count Three charged Hammond with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, Hammond moved to suppress evidence from a government wiretap used to intercept wire and electronic communications for cell phones associated with him

and his alleged co-conspirators. During the suppression hearing related to the wiretap, Hammond's counsel raised a separate issue at Hammond's request, asking the government to disclose its potential use of a cell-site simulator prior to its use of the challenged wiretaps. In raising the issue on Hammond's behalf, his counsel noted: "Mr. Hammond feels, Your Honor, in order to have a proper defense we need to have, we need to have information concerning the exact devices or instruments or equipment used to actually intercept the conversations . . . ." J.A. 70. But Hammond's counsel specifically noted that he intentionally did not file a motion to request such disclosure:

> And I did not file a request for such, for such equipment because, Judge Blake, it is my belief that it is not relevant to any theory that I could advance as to how it may somehow affect the legality of the wiretap . . . And again, Your Honor, I, I have a difficult time seeing how that fashions itself into an argument that this Court wants to hear or may wish to hear.

J.A. 70–72. After the issue was raised, the district court declined to consider Hammond's request: "No. I'd like to proceed with the motions that have already been briefed." J.A. 72.

During the jury trial, the government called Shane Lettau, an officer with the Baltimore Police Department and a task force officer with the Drug Enforcement Administration, to testify as an expert witness in the field of interpreting coded language. The government played audio of a conversation between Hammond and Garry Smith from August 2016, in which Hammond and Smith used the word "ticket." During the call, Hammond stated: "Yo that's what I'm trying to tell you but at the same time, I can't . . . yo I can't do that ticket though for one." J.A. 430. The government then asked Officer Lettau to interpret the word "ticket." J.A. 328. In response, Lettau testified:

3

I believe they're talking about money. I believe they're talking about money in this call. It sounds like, Mr. Smith, based on my analysis of the call, Mr. Smith is middling to somebody else; and he's saying to Mr. Hammond, If you're guaranteeing it, you're standing behind it, he can guarantee you the money. And Mr. Hammond is saying, I can't do it for that price.

J.A. 328–29. Hammond did not object to this testimony at trial.

Also, during its cross examination of Hammond, the government introduced an almost six-year-old photograph of Hammond holding money. Prior to the admission of the photograph, Hammond's counsel objected to the introduction of the photograph as irrelevant. The district court overruled the objection.

The jury found Hammond guilty of conspiracy to possess with intent to distribute five kilograms or more of cocaine and not guilty of the felon in possession charge. Hammond moved for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33. In support of his motion, Hammond cited two pieces of allegedly newly discovered evidence—an undisclosed government wiretap and his T-Mobile phone records. The district court denied Hammond's motion. With respect to Hammond's argument concerning an undisclosed wiretap, the district court concluded that there was no evidence of such a wiretap, finding that the evidence presented by Hammond was consistent with other police activity that did not involve the interception of phone communications. The district court also found that the evidence relied upon by Hammond to support the existence of an undisclosed wiretap was not newly discovered. With respect to Hammond's argument concerning his T-Mobile phone records, the district court concluded that the records would only be used for impeachment purposes and would not be grounds for granting a new trial.

4

Subsequently, at his sentencing hearing, Hammond argued that he did not qualify as a career offender because his prior controlled substance convictions were subsumed by a racketeering conviction, resulting in only one prior conviction. As a result, Hammond argued that he was not a career offender and his sentencing guideline range should be between 210 months to 262 months. Hammond conceded that his sentence could not be below 240 months as a result of the statutory minimum. The district court rejected Hammond's argument, determining that Hammond qualified as a career offender, resulting in an Offense Level 37, Criminal History Category V with a guideline range of 324 to 405 months. In the alternative, the district court concluded that an Offense Level 34, Criminal History Category IV with a guideline range of 210 to 262 months was appropriate. After considering the 18 U.S.C § 3553(a) factors, the district court sentenced Hammond to 240 months of imprisonment and 10 years supervised release.

Hammond filed a timely notice of appeal, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C § 1291.

II.

As noted above, Hammond raises five issues on appeal. First, Hammond argues that the district court erred by not requiring the government to disclose whether it had used a cell site simulator to intercept his cell phone calls prior to the issuance of the wiretap. Second, Hammond argues that the district court improperly admitted Officer Lettau's expert testimony about the word "ticket." Third, Hammond argues that the district court erred in allowing the admission of the old photograph of him holding money. Fourth,

5

Hammond argues that the district court erred in denying his motion for a new trial. Fifth, Hammond argues that the district court erred in sentencing him as a career offender. We address each of these arguments in turn.

A.

Hammond first argues that the district court erred by failing to order the government to disclose whether it used a cell-site simulator. Although the district court's ruling might ordinarily be reviewed for abuse of discretion, a district court is under no obligation to consider a defendant's pro se motion when he is represented by counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *United States v. Carranza*, 645 F. App'x 297, 300 (4th Cir. 2016). Here, it is undisputed that Hammond was represented by counsel at all stages of the proceeding below. J.A. 2. It is also clear that Hammond's motion regarding the cell-site simulator was made in a pro se capacity. Hammond's counsel expressly stated that he declined to file a motion on the issue of the cell-site simulator and only raised the issue on Hammond's behalf. J.A. 70-71. Consequently, because it had no obligation to consider Hammond's pro se motion, the district court did not err in failing to order the government to disclose whether it used a cell-site simulator.[1]

---

[1] To the extent Hammond now attempts to raise a challenge under *Brady v. Maryland*, 373 U.S. 83 (1963) on this basis, our review is for plain error. *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014). We find no error, plain or otherwise, as Hammond falls far short of satisfying the requirements for a viable *Brady* claim. *See United States v. Wolf*, 860 F.3d 175, 193 (4th Cir. 2017); *United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011).

B.

Second, Hammond argues that the district court erred in admitting Officer Lettau's testimony regarding the definition of the word "ticket." Because Hammond failed to object to Officer Lettau's testimony at trial, the alleged error is reviewed for plain error. *United States v. Baptiste*, 596 F.3d. 214, 220 (4th Cir. 2010). Under plain error, Hammond must show (1) an error was made; (2) the error is plain; and (3) the error affects substantial rights. *Id*. An error affects substantial rights if it affected the outcome of the district court proceedings. *Id*. Even if the error is plain and affects substantial rights, an appellate court will not correct the error "unless a miscarriage of justice would result or the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quoting *United States v. Johnson*, 219 F.3d 349, 353 (4th Cir. 2000)).

Hammond fails to make this showing. As an initial matter, it is not clear that the district court erred in admitting portions of Officer Lettau's testimony. Federal Rule of Evidence 702 provides the standard for the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, courts routinely allow law enforcement officers with extensive drug experience to give expert testimony on the meaning of drug-related code words. *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007).

7

However, even if an officer is admitted as an expert, his testimony is still subject to several limitations under Rule 702.[2] For example, in providing his testimony, an officer must reliably apply his principles and methods to the facts of the case. *Id*. at 276. In the context of expert testimony on the use of code words in a drug transaction, "*the principle* used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. *The method* used by the agent is the application of extensive experience to analyze the meaning of the conversations." *United States v. Galloway*, 749 F.3d 238, 245 (4th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)) (emphasis in original). If an officer fails to offer an explanation as to why he opined that a conversation meant what it did, an officer's testimony may be inadmissible. *Wilson*, 484 F.3d at 276. Additionally, an officer's testimony must be helpful to the jury to be admissible. *Id*. at 276–77. If an officer simply restates a clear conversation, his testimony is not considered helpful and is not admissible under the rule. *Id*. Finally, an officer may not add language to a conversation through his testimony. *Id*. at 277.

---

[2] In *United States v. Wilson*, 484 F.3d 267 (4th Cir. 2007), this Court distinguished between experiential expert testimony and scientific expert testimony. *Id*. at 274. In doing so, we noted that while scientific expert testimony is "objectively verifiable" and "subject to the expectations of falsifiability, peer review, and publication," experiential expert testimony is more opaque. *Id.* (internal quotation marks omitted). Despite the lack of scientific method used in experiential testimony, *Wilson* indicates that experiential experts must still be subjected to the rigors of Rule 702's requirements. *See id*.

Here, Hammond argues Officer Lettau's testimony translating the word "ticket" is inadmissible because he testified beyond his expertise by decoding an entire conversation and by failing to apply his methodology. Both of Hammond's arguments lack merit. In response to the government's question, Officer Lettau immediately defined "ticket" as money. He then explained his interpretation by defining the term in the context of the call. Rather than translate clear language, Officer Lettau interpreted a coded word within the context of a larger conversation.

However, even if the district court erred in admitting Officer Lettau's testimony, the error did not affect Hammond's substantial rights. Officer Lettau testified about multiple other coded calls, and his testimony was supported by the testimony of Hammond's co-conspirators. Given the weight of this other evidence, Hammond has failed to show that any error affected the outcome of the proceeding.

C.

Third, Hammond argues that the district court erred in admitting the nearly six-year-old photograph of him holding money because it was not relevant. A district court's evidentiary ruling is reviewed for abuse of discretion. *United States v. Johnson*, 587 F.3d 625, 637 (4th Cir. 2009). "Erroneously admitted evidence is harmless if a reviewing court is able to 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of

9

consequence in determining the action. Fed. R. Evid. 401. Evidence concerning a witness's credibility is relevant and may be introduced on cross examination. *See United States v. Zandi*, 769 F.2d 229, 236 (4th Cir. 1985); *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010). Credibility evidence is relevant because "it might affect the finder of fact's determination of the weight to attach to the witness's testimony regarding matters of significance to the determination of the action." *Leardini v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:09-CV-264, 2012 WL 346674, at \*2 (W.D.N.C. Feb. 2, 2012) (quoting 1-6 WEINSTEIN'S EVIDENCE MANUAL § 6.01).

During trial, Hammond testified that he did not have enough money to be released from jail during the time period in which the photograph was taken. J.A. 339. ("Well, after I was charged [in 2011], I didn't have the money to get released. Nobody in my family had the money to bail me out, so I sat there . . . ."). In response to Hammond's testimony, the government introduced the photograph of Hammond holding money from during the time period Hammond testified he had no money to attack his credibility. "[B]y taking the stand, [Hammond's] credibility became subject to attack on cross-examination." *Zandi*, 769 F.2d at 236.

Given this purpose, the district court did not abuse its discretion in admitting the photograph. And even if the district erred in admitting the photograph, such error would be harmless because the judgment was not substantially swayed by the error.

D.

Fourth, Hammond argues that the district court erred in denying his motion for a new trial under Federal Rule of Criminal Procedure 33. In support of his motion, Hammond

10

points to two pieces of evidence that were allegedly newly discovered—an undisclosed wiretap and his T-Mobile phone records. The district court's decision to deny a motion for a new trial is reviewed for abuse of discretion. *United States v. Burfoot*, 899 F.3d 326, 340 (4th Cir. 2018).

To obtain a new trial on the basis of newly discovered evidence, a defendant must show: (1) the evidence is newly discovered; (2) the defendant exercised due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues; and (5) the evidence probably would result in an acquittal at a new trial. *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). A defendant must meet all five parts of the *Chavis* test.

Hammond fails to make this showing for multiple reasons. First, and as the district court correctly pointed out, Hammond produced no evidence showing the existence of an undisclosed wiretap. In fact, the only evidence in the record on this point—an affidavit from an officer in the Baltimore Police Department—expressly states that no undisclosed wiretap of Hammond's phone occurred during those months. Further, despite repeated requests to do so, Hammond failed to produce all of the evidence in support of his motion for a new trial on appeal, effectively precluding our review of the district court's conclusion on this topic. *See* Fed. R. App. P. 10(b)(2). Second, to the extent Hammond has any evidence to support his claim of an undisclosed wiretap, the district court was correct in concluding the evidence was not newly discovered. As discussed above in Part II. A, Hammond made a pre-trial motion related to an undisclosed wiretap *prior to trial*. The district court did not abuse its discretion in determining that evidence referred to by

11

Hammond before the trial began was not newly discovered. Third, the newly discovered evidence provides only minimal impeachment value. Finally, and perhaps most significantly, this evidence would probably not result in an acquittal. The government produced significant evidence of Hammond's guilt at trial, including the testimony of co-conspirators, the testimony of law enforcement agents, Hammond's own testimony and airline and hotel records.

E.

Finally, Hammond argues that the district court erred in sentencing him as a career offender. A district court's criminal sentence is reviewed for reasonableness under an abuse of discretion standard. *United States v. Shephard*, 892 F.3d 666, 670 (4th Cir. 2018). A sentence based on an improperly calculated guidelines range is procedurally unreasonable. *Id*. However, it is unnecessary to vacate a conviction if a district court's error in calculating the guidelines range is harmless. *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017).

A defendant is a career offender under the sentencing guidelines if (1) he was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a).

On appeal, Hammond argues that he is not a career offender because he does not have two prior felony convictions of a crime of violence or a controlled substance offense. In support of his position, Hammond largely relies on *United States v. Davis*, 720 F.3d 215

12

(4th Cir. 2013). In *Davis*, this Court held that a defendant was not a career offender when he was sentenced under a consolidated sentence under North Carolina law. 720 F.3d at 218. Under the plain language of the Guidelines, this Court reasoned that the defendant had received only one sentence and was thus ineligible for career offender status. *Id.* at 219. Hammond attempts to analogize to *Davis*, arguing that his two prior state felony drug convictions should be subsumed by a separate racketeering conviction.

Hammond's argument fails because *Davis* is clearly distinguishable. In *Davis*, this Court limited its holding to the unique circumstances surrounding the North Carolina consolidated judgment: "We hold that where a defendant receives a 'consolidated sentence' (or 'consolidated judgment') under North Carolina law, it is one sentence and absent another qualifying sentence, the enhancement is inapplicable." *Id.* In contrast to *Davis*, Hammond did not receive a consolidated sentence under North Carolina law. Instead, as the district court noted, he was convicted of two separate offenses in separate judicial districts. J.A. 508.

## III.

For these reasons, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

13